**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: MOTION FOR CIVIL CONTEMPT<br><br>(BMC) | Civil Action No.<br>1:12-mc-00557-BMC |

## MEMORANDUM IN SUPPORT OF MOTIONS
## BY THE ASSOCIATED PRESS TO INTERVENE AND UNSEAL

*Of Counsel:*

Karen Kaiser
Brian Barrett
The Associated Press
450 West 33rd Street
New York, NY  10001
Telephone: (212) 621-7547
Fax: (212) 506-6131
E-mail: kkaiser@ap.org
E-mail: bbarrett@ap.org

Jay Ward Brown
LEVINE SULLIVAN KOCH & SCHULZ, LLP
321 West 44th Street, Suite 1000
New York, NY 10036
Tel: (212) 850-6100
Fax: (212) 850-6131
jbrown@lskslaw.com

*Attorney for Movant-Intervenor*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ..........................................................................................................................4

I.  THE AP SHOULD BE PERMITTED TO
    INTERVENE TO ENFORCE THE PUBLIC'S ACCESS RIGHT...................................5

II.  THE PUBLIC HAS A CLEAR RIGHT OF
     ACCESS TO THE SEALING RECORDS...........................................................................6

    A.  The Public Access Right Applies
        Fully To Records Filed In This Proceeding...........................................................6

    B.  The Proponent of Sealing Bears The Burden Of Satisfying
        Strict Constitutional Standards To Justify Sealing Records ...................................8

        1.  Substantial Probability of Harm to a Compelling Interest...........................9

        2.  Narrow Tailoring and Alternatives .............................................................10

        3.  Effectiveness and Public Disclosure...........................................................11

CONCLUSION......................................................................................................................13

## **TABLE OF AUTHORITIES**

**Cases**                                                                                            **Page(s)**

*ABC v. Stewart,*
   360 F.3d 90 (2d Cir. 2004)..................................................................................8

*In re Application to Unseal 98 Cr. 1101(ILG),*
   891 F. Supp. 2d 296 (E.D.N.Y. 2012) ...............................................................11

*Commercial Union Ins. Co. v. Lines,*
   239 F. Supp. 2d 351 (S.D.N.Y. 2002), *vacated on other grounds,* 378 F.3d
   204 (2d Cir. 2004)..............................................................................................7

*Doe v. Pub. Citizen,*
   749 F.3d 246 (4th Cir. 2014) ....................................................................7, 9, 10

*EEOC v. Nat'l Children's Ctr., Inc.,*
   146 F.3d 1042 (D.C. Cir. 1998) ..........................................................................6

*Globe Newspaper Co. v. Super. Ct.,*
   457 U.S. 596 (1982)............................................................................................5

*In re The Herald Co.,*
   734 F.2d 93 (2d Cir. 1984)............................................................................9, 11

*In re High Sulfur Content Gasoline Prods. Liab. Litig.,*
   517 F.3d 220 (5th Cir. 2008) ..............................................................................1

*Jiangsu Steamship Co. v. Success Superior Ltd.,*
   2015 WL 518567 (S.D.N.Y. Feb. 5, 2015)..........................................................7

*Joy v. North,*
   692 F.2d 880 (2d Cir. 1982)................................................................................7

*Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co.,*
   2005 WL 1216292 (S.D.N.Y. May 23, 2005) ......................................................7

*Lugosch v. Pyramid Co. of Onondaga,*
   435 F.3d 110 (2d Cir. 2006).....................................................................*passim*

*The Methodist Hosps., Inc. v. Sullivan,*
   91 F.3d 1026 (7th Cir. 1996) .......................................................................10, 11

*In re N.Y. Times Co.,*
   828 F.2d 110 (2d Cir. 1987).........................................................................8, 9

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   164 F.R.D. 346 (S.D.N.Y. 1996) ...................................................................6

*Nebraska Press Ass'n v. Stuart*,
   423 U.S. 1327 (1975) ....................................................................................5

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) ......................................................................................7

*Pepsico, Inc. v. Redmond*,
   46 F.3d 29 (7th Cir. 1995) ...........................................................................11

*Press-Enter. Co. v. Super. Ct.*,
   464 U.S. 501 (1984) .................................................................................4, 5, 9

*Press-Enter. Co. v. Super. Ct.*,
   478 U.S. 1 (1986) ....................................................................................4, 5, 9

*Prod. Res. Grp., L.L.C. v. Martin Prof'l, A/S*,
   907 F. Supp. 2d 401 (S.D.N.Y. 2012)...........................................................7

*Richmond Newspapers, Inc. v. Virginia*,
   448 U.S. 555 (1980) .................................................................................6, 7, 9

*Roe v. United States*,
   428 F. App'x 60 (2d Cir. 2011) .....................................................................2

*Salomon Smith Barney, Inc. v. HBO*,
   2001 WL 225040 (S.D.N.Y. Mar 7, 2001) ....................................................8

*Schiller v. City of N.Y.*,
   2006 WL 2788256 (S.D.N.Y. Sept. 27, 2006)...............................................6

*Union Oil Co. of Cal. v. Leavell*,
   220 F.3d 562 (7th Cir. 2000) ........................................................................7

*United States v. Aref*,
   533 F.3d 72 (2d Cir. 2008).......................................................................7, 10

*United States v. Cianfrani*,
   573 F.2d 835 (3d Cir. 1978).........................................................................1

*United States v. Haller*,
   837 F.2d 84 (2d Cir. 1988)..........................................................................10

*United States v. Hubbard*,
   650 F.2d 293 (D.C. Cir. 1980) ....................................................................11

*United States v. Index Newspapers LLC,*
    766 F.3d 1072 (9th Cir. 2014) ....................................................................8

*United States v. Mentzos,*
    462 F.3d 830 (8th Cir. 2006) ......................................................................7

*United States v. Strevell,*
    2009 WL 577910 (N.D.N.Y. Mar. 4, 2009) ..............................................8

*United States v. Zazi,*
    2010 WL 2710605 (E.D.N.Y. June 30, 2010) ...........................................8

*Video Software Dealers Ass'n v. Orion Pictures Corp.,*
    21 F.3d 24 (2d Cir. 1994) ...........................................................................9

*Westmoreland v. CBS,*
    752 F.2d 16 (2d Cir. 1984)..........................................................................8

Proposed intervenor The Associated Press ("AP") hereby moves (1) to intervene in this civil action pursuant to Federal Rule of Civil Procedure 24 for the sole purpose of moving to unseal certain portions of the record to which AP and other members of the public presumptively have a right of access, and (2) to unseal those records pursuant to the right of access secured by the First Amendment to the United States Constitution and the common law.

## PRELIMINARY STATEMENT

"'Public confidence in our judicial system cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view.'" *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008) (quoting *United States v. Cianfrani*, 573 F.2d 835, 851 (3d Cir. 1978)). However, every document in this proceeding remains under seal, including the order(s) sealing them, and no findings supporting such sealing have been publicly issued. To inform the public of the basis for this extraordinary secrecy, and to preserve the public's right to be heard regarding the sealing of the remaining records, AP seeks, for the present, only to unseal the Court's order(s) sealing the record in this action from public view, along with the parties' submissions related thereto (the "Sealing Records").[1]

---

[1] Precisely because the entire record is sealed, it is difficult for AP to determine which items in the record fall within the scope of this motion. From the limited information available, it appears that Dkt. Nos. 32, 39, 42, 43, 118, 119, 126, 127, 131, 132, 133, 140, 142, 153, 154, and 155 may be implicated by this motion. For clarity, in referring to the "Sealing Records," AP seeks those orders and other portions of the record that address the sealing of the record, or any portion of it, from *public* view. AP does not in this motion challenge any order "gagging" a party (*i.e.* prohibiting the party from disseminating portions of the record) except to the extent such a gag order may have been relied upon by the Court as justification for sealing the record from *public* view.

Under the First Amendment, the Sealing Records are presumptively open to the public unless a party seeking to seal particular information identifies it with specificity and makes a specific, four-part factual showing that compelling reasons justify sealing the information.  For the reasons that follow, it is difficult to imagine that such a showing could be made with respect to any portion of the record in this proceeding, much less a showing that the *entire* record must remain sealed wholesale.  The continued sealing of the record, therefore, appears to violate the Constitution.

## BACKGROUND

This civil proceeding arises from criminal and civil RICO actions against a previously pseudonymous defendant now identified by the criminal court docket (and by docket information in this proceeding) as Felix Sater.  *United States v. Sater*, No. 1:98-cr-01101-ILG-1 (E.D.N.Y.), ECF Dkt. ("Criminal Dkt.") No. 123 (Dec. 8, 2011).[2]  As the Second Circuit has more fully summarized in *Roe v. United States*, 428 F. App'x 60, 63-64 (2d Cir. 2011), Sater entered a guilty plea to certain criminal charges and cooperated with the Department of Justice, but was later named (as John Doe) in a civil RICO complaint by an attorney who filed pseudonymously as "Richard Roe."  Roe appended certain sealed criminal court records to his complaint, including Pre-Sentence Reports ("PSRs"), proffer agreements, Sater's cooperation agreement, and charging instruments.  *Id*. at 64.

Shortly thereafter, the government applied to Judge Glasser, who presided over the Criminal Docket, for a gag order enjoining Roe's further dissemination of those documents. Judge Glasser granted the application, permanently enjoining Roe from disseminating the first

---

[2] The public docket in this proceeding also reflects the existence of a sealed document titled "Affidavit Testimony of Brian Vodicka as to his independent determination from public sources that John Doe is Felix Sater and his disclosure of same to the Miami Herald."  Dkt. 64-4.

PSR, and amidst a flurry of motions addressing Roe's permission to release certain records, and Roe's serial appeals therefrom, the Second Circuit affirmed entry of the initial gag order, and further affirmed this Court's order (also unsealed and providing information about the statements Roe wanted to make) extending the injunction to include certain other statements Roe wished to make, in part because Sater had not yet been publicly identified as the defendant.  Criminal Dkt. 111.[3]

Though every document in this civil proceeding remains under seal in its entirety, Judge Glasser unsealed most of the remaining sealed court records in the Criminal Docket on March 13, 2013, rendering key aspects of these civil contempt proceedings public, including the facts that:

1.  Sater filed a civil contempt motion, Criminal Dkt. 133, against Roe and Roe's attorney, Richard E. Lerner, alleging that they violated orders issued by the Second Circuit and/or Judge Glasser by disclosing sealed documents to the *New York Times*. *See* Criminal Dkt. 132-5 (providing detailed allegations of contempt). Sater also alleged that Roe and Lerner improperly disclosed sealed documents  to Gerald Shargell, an attorney who represented a defendant, Daniel Persico, in a case in which Sater cooperated with the prosecution. Criminal Dkt. 165.

2.  Roe is Frederick M. Oberlander, Esq. Criminal Dkt. 205-1; *see also* Criminal Dkt. 215-2 (describing this Court's finding in contempt proceeding that Lerner is conflicted out of representing Oberlander because they are co-respondents and "we might blame . . . each other"; stating that Lerner represented Oberlander in connection with all First Amendment and access-related matters).

3.  The circumstances in which the underlying records were obtained has been disputed.  *Compare* Criminal Dkt. 138-12 (Affidavit of Joshua Bernstein describing sham engagement and improper access to hard drive) *with* Criminal Dkt. 201 (response of Roe/Oberlander to Bernstein affivit).

---

[3] On March 17, 2011, the government confirmed that Sater was the *Doe* defendant and moved to unseal certain records in the Criminal Docket.  Criminal Dkt. 101.  By March 13, 2013, Judge Glasser relegated "John Doe" to a parenthetical and called Sater by his full name in an unsealing order.  Criminal Dkt. 220.

A great deal of information was also distributed publicly as well.  A legal blog published an extensive review of the sealing and gag order issues that had come up, naming names (Sater, Oberlander, Lerner) and providing hyperlinks to hosted copies of a number of court documents, including a motion Oberlander filed in connection with his appeal to the Second Circuit seeking access to certain transcripts from a designated docket opened for the unsealing motions before Judge Glasser.[4]  At present, the motions and orders addressing sealing and gag orders in the criminal case have been almost entirely unsealed, providing a number of details and argument about the records Roe was enjoined against disseminating. *E.g.* Criminal Dkt. 123 (motion); Criminal Dkt. 111 (order extending gag order to cover Roe's proposed statements), and the contempt proceedings, *e.g.* Criminal Dkt. 146 at 1 (requesting adjournment of argument regarding gag order in contemplation of civil contempt proceedings and observing that "the Parties and Roe appeared on February 27, 2012 before Judge Cogan for a civil contempt proceeding . . . During the appearance Judge Cogan referred Roe and his attorney Richard Lerner, Esq., to the U.S. Attorney's Office for criminal contempt prosecution.").

## <u>ARGUMENT</u>

AP makes this application as a nonparty news organization asserting the public's First Amendment right of access to judicial records – in this case, the Sealing Records as that term is defined *supra*.  The legal standard is well-established:  The proponent of a restriction on public access to judicial records must demonstrate both a compelling need for secrecy and that alternatives to closure are inadequate. *See, e.g.*, *Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501,

---

[4] Dan Wise, *Solicitor General Office's Gaffe May Help NY Lawyers Facing Contempt*, WiselawNY (Sept. 17, 2003), https://wiselawny.wordpress.com/2013/09/17/solicitor-general-offices-gaffe-may-help-ny-lawyers-facing-contempt/.

510-511 (1984) ("*Press-Enter. I*"); *Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 13-14 (1986) ("*Press-Enter. II*").

It is beyond dispute that the First Amendment's presumption of access applies to civil contempt proceedings like this one.  Likewise, it is beyond dispute that no judicial record may be sealed before specific, *on-the-record* findings are made that each of four constitutional requirements for sealing are satisfied.  And it is implausible that there is an adequate justification for the continued sealing of the Sealing Records themselves in their entirety, which is the only portion of the record sought by the present motion.  To the contrary, as is more accurately reflected in the Criminal Docket, where countless motions and orders to seal or unseal the very documents likely at issue in this contempt proceeding remain available to the public, the public's right of access is at its apex where judicial opinions, and the motions and exhibits upon which they are rendered, are concerned.

Accordingly, the AP respectfully requests that the Sealing Records be unsealed, and "expeditiously," for "'[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment.'"  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) (quoting *Nebraska Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975)).  AP respectfully reserves its right to move to unseal further portions of the record once it is apprised of the Court's basis for sealing the record.

## I.
## THE AP SHOULD BE PERMITTED TO
## INTERVENE TO ENFORCE THE PUBLIC'S ACCESS RIGHT

It is well settled that the press has a right to intervene in a judicial proceeding for the limited purpose of unsealing judicial records, and "*must* be given an opportunity to be heard." *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982) (emphasis added) (quotation

marks and citation omitted); *see also, Lugosch*, 435 F.3d at 118-19 (recognizing the press's right to oppose sealing of motion papers in civil litigation). Federal courts routinely permit journalists to intervene under Fed. R. Civ. P. 24 to challenge restrictions on the public's right of access. *Schiller v. City of N.Y.*, 2006 WL 2788256, at *2 (S.D.N.Y. Sept. 27, 2006) (newspaper "may well have an absolute right" to intervene under Rule 24(a); granting permissive intervention under Rule 24(b)); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 164 F.R.D. 346, 351 (S.D.N.Y. 1996) (newspaper satisfied Rule 24(a) for intervention as of right). In fact, "every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998); *see also Lugosch*, 435 F.3d at 117-18, 126-27. Because the AP has a "direct interest in collecting information about a matter of public interest," *Schiller*, 2006 WL 2788256, at *2, it should be permitted to intervene for the limited purpose of seeking to unseal the Sealing Records. And because holding an "intervention motion in abeyance" is "a delay that [is] effectively a denial of any right to contemporaneous access," *Lugosch*, 435 F.3d at 126, the AP respectfully requests prompt consideration of its request to intervene.

## II.
## THE PUBLIC HAS A CLEAR RIGHT OF ACCESS
## TO THE SEALING RECORDS

### A.    The Public Access Right Applies
### Fully To Records Filed In This Proceeding

The United States Supreme Court first articulated the public's independent First Amendment right of access to judicial proceedings in *Richmond Newspapers, Inc. v. Virginia*,

448 U.S. 555 (1980).[5]  The right applies with particular force to judicial opinions and the motions filed to influence them, because judicial decision-making can have neither legitimacy nor accountability without transparency:  "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Id.* at 572; *see also United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) ("Transparency is pivotal to public perception of the judiciary's legitimacy and independence.").

There is simply no question that "[t]he qualified First Amendment right attaches to judicial opinions."  *Prod. Res. Grp., L.L.C. v. Martin Prof'l, A/S*, 907 F. Supp. 2d 401, 417 (S.D.N.Y. 2012).[6]  "Without access to judicial opinions, public oversight of the courts, including the processes and the outcomes they produce, would be impossible."  *Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014); *see also United States v. Mentzos*, 462 F.3d 830, 843 n.4 (8th Cir. 2006) (denying motion to file opinion under seal because "decisions of the court are a matter of public record"); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) ("[I]t should go without saying that the judge's opinions and orders belong in the public domain.").  As the Second Circuit has observed, "[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982).

---

[5] The right is also secured at common law.  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  Because the First Amendment imposes "a higher burden on the party seeking to prevent disclosure," *Lugosch*, 435 F.3d at 126, AP focuses here on the Constitutional right.

[6] The common law right also "obviously applies" to judicial opinions, and with particular strength, because they are "not only 'relevant' to the judicial function but essential to it." *Jiangsu Steamship Co. v. Success Superior Ltd.*, 2015 WL 518567, at *4 (S.D.N.Y. Feb. 5, 2015); *see also Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co.*, 2005 WL 1216292, at *6 (S.D.N.Y. May 23, 2005) ("our opinions should be matters of public record"); *Commercial Union Ins. Co. v. Lines*, 239 F. Supp. 2d 351, 358 (S.D.N.Y. 2002) ("At a minimum, the Court's orders and decisions should be available for public review"), *vacated on other grounds,* 378 F.3d 204 (2d Cir. 2004).

To ensure that the public can understand the basis for judicial decision-making, the access right applies across a range of civil proceedings, *see Westmoreland v. CBS*, 752 F.2d 16, 23 (2d Cir. 1984), including civil contempt hearings, *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1085 (9th Cir. 2014), and includes the right of access to "written documents submitted in connection with judicial proceedings that themselves implicate the right of access," *In re N.Y. Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987).  It includes both motions and exhibits, *Lugosch*, 435 F.3d at 123-24, letter brief exhibits, *Salomon Smith Barney, Inc. v. HBO*, 2001 WL 225040, at *3 (S.D.N.Y. Mar 7, 2001), and, as this District's former Chief Judge and others have ruled, motions to seal and supporting factual submissions, *United States v. Zazi*, 2010 WL 2710605, at *1-2 nn. 1-2 (E.D.N.Y. June 30, 2010) (Dearie, J.) (ordering unsealing of motion to seal, factual submission in support, and sealed response to media application for unsealing); *United States v. Strevell*, 2009 WL 577910, at *6 (N.D.N.Y. Mar. 4, 2009) (ordering unsealing of motion to seal, memorandum in support, and proposed order); *Index Newspapers LLC*, 766 F.3d at 1085 (access right applies to motions to unseal contempt files and filings in appeals from orders relating to the sealing or unsealing of judicial orders).  The Sealing Records are not only subject to the public's right of access, they implicate the public's strongest First Amendment interests.

**B.     The Proponent of Sealing Bears The Burden Of Satisfying
Strict Constitutional Standards To Justify Sealing Records**

It is the proponent of sealing (whether in this case that be the Court, or one or more of the parties) who bears the burden of establishing that records properly may be sealed from public view.  *Lugosch*, 435 F.3d at 123-24, 126; *ABC v. Stewart*, 360 F.3d 90, 106 (2d Cir. 2004).  To meet this burden, the proponent must establish four elements:

(1) **Compelling Need**: the proponent of sealing must demonstrate a substantial probability of harm to a compelling interest, *Richmond Newspapers, Inc.*, 448 U.S. at 580-81; *Press-Enter. I*, 464 U.S. at 510;

(2) **No Alternatives**: the proponent must demonstrate that no alternative will adequately protect the alleged interest, *Press-Enter. II*, 478 U.S. at 13-14; *In re The Herald Co.*, 734 F.2d 93, 100 (2d Cir. 1984);

(3) **Narrow Tailoring**: the proponent must demonstrate that the proposed restriction on the right of access is narrowly tailored, *Press-Enter. II*, 478 U.S. at 13-14; *Lugosch*, 435 F.3d at 124; and

(4) **Effectiveness**: the proponent must demonstrate that the proposed restriction will be effective, not futile, in preventing the alleged harm; *Press-Enter. II*, 478 U.S. at 14; *In re The Herald Co.*, 734 F.2d at 100-01.

For each of these factors, the proponent of sealing must make factually specific showings that could support sealing and the Court must make specific findings of fact regarding each of these four factors. *In re N.Y. Times Co.*, 828 F.2d at 116 ("[b]road and general findings by the trial court . . . are not sufficient to justify closure"). It is virtually impossible to conceive of circumstances that could justify wholesale sealing of the record in this civil proceeding, much less the Sealing Records themselves.

### 1. Substantial Probability of Harm to a Compelling Interest

With respect to the first factor, "a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need." *Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994). Here, no compelling interest has been publicly identified. As far as can be inferred from public records in the underlying criminal prosecution (including Sater's *unsealed* motion that describes the documents at issue), Sater's principal basis for seeking to prohibit Roe from disseminating certain records was the threat of violence or intimidation by mob elements if the *Doe* defendant had been identified and his cooperation revealed. Criminal Dkt.137-3. While unclear, the government's argument appears to have been that failing to protect the *Doe* defendant's identity

9

would chill other informants' willingness to cooperate with the government, or that such information might harm a different investigation, but appears principally to assert an interest in preserving the integrity of a sealing order. *See* Criminal Dkt. 220 (referencing "the integrity of government activity"); Criminal Dkt. 150 at 3 (asserting "the need to ensure the integrity of the various sealing orders in the case."). But the government has since publicly confirmed the identity of the *Doe* defendant as Felix Sater, and publicly available records confirm the existence of his cooperation agreement and the nature of his cooperation, including a publicly filed transcript of Sater's sentencing hearing, which describes his assistance to the Government in prosecutions involving the Bonnano and Persico crime families, and includes testimony of FBI agents identified by name. Criminal Dkt. 202-1. Thus, these arguments (if indeed they were the arguments advanced by the proponents of sealing in this civil proceeding) cannot support a finding of compelling need whether with regard to the Sealing Records, or with respect to any portion of the record.

### 2.     Narrow Tailoring and Alternatives

Moreover, any valid concerns about public disclosure of discrete facts contained in the Sealing Records can be addressed through redaction: Wholesale sealing of records to protect a few pieces of information simply is not permitted. The Second Circuit has "reinforce[d] the requirement that district courts avoid sealing judicial documents in their entirety unless necessary," *Aref*, 533 F.3d at 83, and even if the government could show that particular information about Sater's cooperation posed a sufficiently probable threat to a compelling interest that could not be addressed by alternative means, such as witness protection, that information must be redacted without withholding the entire record from the public. *United States v. Haller*, 837 F.2d 84, 88 (2d Cir. 1988) (plea agreement should be produced with single paragraph of grand jury information redacted); *see also The Methodist Hosps., Inc. v. Sullivan*,

91 F.3d 1026, 1032 (7th Cir. 1996) ("To say that particular information is confidential is not to say that the entire document containing that information is confidential.").   This is particularly important in the context of judicial opinions, where courts must make the fullest possible disclosure of their reasons for sealing particular information. *E.g. United States v. Hubbard*, 650 F.2d 293, 324 (D.C. Cir. 1980) (remanding for issuance of a more specific and publicly available sealing order); *Pepsico, Inc. v. Redmond*, 46 F.3d 29, 30 (7th Cir. 1995) (denying request to redact three percent of judicial opinion; observing that "the district court's explanation for its judgment should be placed in public view.").

### 3.      Effectiveness and Public Disclosure

Finally, as Judge Glasser observed in the criminal case, "a court lacks power to seal information that, although once sealed, has been publicly revealed."  *In re Application to Unseal 98 Cr. 1101(ILG)*, 891 F. Supp. 2d 296, 300 (E.D.N.Y. 2012); *see also In re The Herald Co.*, 734 F.2d at 101 (restrictions on access are unconstitutional if "the information sought to be kept confidential has already been given sufficient public exposure").

Here, there has been extensive public disclosure of a number of aspects of the controversy that the parties have litigated across the dockets of at least three courts.  Some, if not most, of the information presumably contained in the Sealing Records has been disclosed by the extensive unsealing of gag and sealing motions and orders in the criminal proceedings, where identical "governmental interests" were present, and the unsealed records likely contain information and arguments similar to those contained in the Sealing Records in this proceeding, including:

1.  Sater's argument that records should remain sealed because of the threat of physical reprisals from targets of investigations in which he cooperated.  Sater filed a supplemental letter in connection with his civil contempt motion alleging in part that he was threatened by Daniel Persico and that his associate (and fellow cooperating witness) Salvatore Lauria was physically assaulted.  *E.g.* Criminal Dkts. 137-3 & 165.

2. Roe/Oberlander's counterargument that the alleged harm from disclosure of Sater's cooperation was groundless because it had been known that Persico had known of Lauria and Sater's cooperation for ten years before the alleged assault. *E.g.* Criminal Dkt. 223 at 2.

3. Roe/Oberlander's further counterargument, in a motion filed with the Second Circuit in connection with a putative appeal, that Lauria's cooperation with the government had been well known for the decade after he published a book describing his cooperation in 2002, and that Persico had been apprised of Oberlander's own cooperation in the government's *Brady* and *Giglio* disclosures in his criminal case.  Appellant's Mot. to Unseal Transcripts and Stay Proceedings, *In re Applications to Unseal*, No. 13-2373 (2d Cir. Aug. 21, 2013) (2d Cir. Dkt. 36) at 11, 17, 22-24.

To be clear, AP has no obligation to demonstrate that information sealed in this proceeding is publicly available elsewhere.  Rather, it is the burden of proponents of sealing this record to demonstrate that maintaining the seal will be effective in protecting a compelling need for secrecy.  AP's point is simply that even a cursory review of the public record in other proceedings demonstrates that much of what apparently remains under seal in this case is already known to the public, and therefore the continued sealing of such information in this case is necessarily futile as a matter of law.

**CONCLUSION**

For each and all the foregoing reasons, the AP respectfully requests that the Court grant

its motions to intervene and to unseal the Sealing Records in question.

Respectfully submitted,

Of Counsel:                          LEVINE SULLIVAN KOCH & SCHULZ, LLP

Karen Kaiser
Brian Barrett                        By:____/s/ Jay Ward Brown_____
The Associated Press                       Jay Ward Brown
450 West 33rd Street                 321 West 44th Street, Suite 1000
New York, NY  10001                  New York, NY 10036
Telephone: (212) 621-7547            (212) 850-6100
Fax: (212) 506-6131
E-mail: kkaiser@ap.org               *Attorney for The Associated Press*
E-mail: bbarrett@ap.org

13